UNITED STATES v. OREGON & C. R. CO. et al.

(Circuit Court, D. Oregon. August 21, 1893.)

No. 1,936.

1. PUBLIC LANDS—OREGON CENTRAL RAILROAD GRANT.
    Act May 4, 1870, (16 Stat. 94,) granting lands to the Oregon Central Railroad Company to aid in the construction of a railroad and telegraph line "from Portland to Astoria, Oregon, and from a suitable point of junction near Forest Grove to the Yamhill river," should be construed as making two distinct grants to two distinct railroads, one from Portland to Astoria, and the other at right angles with the first from the Yamhill river to a junction with the first near Forest Grove; and, upon completion of the first road from Portland to Forest Grove, and the second from Forest Grove to Yamhill river, and the operation thereof as one continuous railway, the grantee was not entitled to lands lying within the exterior quadrant formed by imaginary lines, drawn through the junction at right angles to the courses of the respective roads. U. S. v. Union Pac. Ry. Co., 13 Sup. Ct. Rep. 724, 148 U. S. 562, distinguished.

2. SAME—FORFEITURE.
    Such lands were forfeited by Act Jan. 31, 1885, (23 Stat. 296,) as "adjacent to and coterminous with the uncompleted portions of said road."

3. STATUTES — CONSTRUCTION —VIEWS OF INDIVIDUAL LEGISLATORS EXPRESSED IN DEBATE.
    A court cannot recur to the views of individual members of congress in debate for the purpose of aiding in the construction of a doubtful act, but it may recur to the history of the times when the act was passed, and the general state of public, judicial, and legislative opinion at that time.

In Equity. Bill by the United States against the Oregon & California Railroad Company and the Oregon Central Railroad Company to enforce a forfeiture of certain lands. Respondents filed a cross bill praying that their title be quieted. Decree for complainants.

Franklin P. Mays and George H. Williams, for the United States.
Earl C. Bronaugh and W. D. Fenton, for defendants.

BELLINGER, District Judge. This is a suit by the United States to enjoin the railroad companies, defendants, and all persons holding under them, from asserting title to certain lands included in a grant to the Oregon Central Railroad Company, and assigned by that company to the Oregon & California Railroad Company,

and claimed by the United States to have been forfeited, and to enjoin the prosecution of any suits or actions by either of said companies, or by those claiming under them, on account of the title claimed to have been derived through such grant.

The defendant companies, after answering the bill of complaint, filed their cross bill, praying to have their title quieted to the lands in question, to which the United States fully answered.

The facts in the case are stipulated by the parties. The question in dispute arises in this way: On May 4, 1870, congress passed an act granting lands to the Oregon Central Railroad Company to aid in the construction of a railroad and telegraph line "from Portland to Astoria, Oregon, and from a suitable point of junction near Forest Grove to the Yamhill river, near McMinville, in the state of Oregon." The line of this road from Portland to the point of junction near Forest Grove runs directly west, and the road from such point of junction runs nearly south to the Yamhill river. In July, 1871, the Oregon Central Railroad Company filed in the office of the secretary of the interior a map showing the location of the line of the road from Portland to a point on the Yamhill river near McMinville, and also from a junction near Forest Grove towards Astoria to a point one mile north of the summit of the range of hills dividing the Tualatin from the Nehalem valley, a distance of 20 miles. The map of definite location from Astoria to said point was filed June 23, 1876. On February 16, 1872, the secretary of the interior accepted the first 20 miles of completed road, commencing at Portland, and on June 23, 1876, he accepted 27½ miles from the 20-mile post to the Yamhill river. On September 8, 1880, the Oregon Central Railroad Company sold and conveyed to the Oregon & California Railroad Company its said road and all its title and right to the said land grant. On January 31, 1885, no part of the road from Forest Grove to Astoria having been built, congress passed an act forfeiting so much of the lands granted as aforesaid "as are adjacent to and coterminous with the uncompleted portions of said road, and not embraced within the limits of said grant for the completed portions of said road." On July 8, 1885, the commissioner of the general land office issued instructions to the local land officers at the land office at Oregon City for their guidance under the forfeiture act, with which was inclosed a diagram showing the limits of the forfeited lands, and of that part of the grant not affected by the forfeiture act. This diagram shows that the road runs from Portland west to Forest Grove, where it turns almost at a right angle, and runs south to McMinville. From Forest Grove two lines are drawn, one due north, the other due west, both terminating at the 20-mile limits. The granted lands lying within the quadrant formed by these lines and the 20-mile limits, and also the lieu lands within such lines and the 25-mile limits, are designated on the diagram as "Forfeited." The diagram also shows the forfeited lands on the line from Forest Grove to Astoria. These instructions were affirmed by the secretary of the interior on April 5, 1887. The receiver in charge of the Oregon & California

Railroad Company duly protested against the action of the land department so far as it related to the granted lands within the quadrant.

On August 8, 1885, such receiver got permission from the United States circuit court to bring suit against the receiver and register at Oregon City to restrain them from permitting filings upon the granted lands within the quadrant. Thereafter such suit was brought in said circuit court, and, a demurrer having been filed to the complaint, the court held that injunction would not lie to control the action of public officers in the determination of questions involving the exercise of official judgment, and the demurrer was sustained. Koehler v. Barin; 25 Fed. Rep. 165. It is claimed in behalf of the railway companies that the grant made by the act of 1870 was to one company for one road from Portland to Astoria and McMinville; as expressed in the title; that, inasmuch as the grant was made without reference to the fact that, beyond the point of junction at Forest Grove, the grant on the Astoria and McMinville sections necessarily overlapped, and there was no attempt to apportion this overlapping portion between these two sections, the company could build either section first, and to that which was first completed the grant within the full prescribed limits would in justice apply; that therefore the restriction of forfeiture in the act of 1885 to lands not embraced within the limits of the grant to the completed portion of the road saved the grant, on the line of the Astoria section, for 20 miles beyond Forest Grove.

If the act in question is construed to provide a continuous line of road from Portland to Astoria, with a branch or connecting road beginning at Forest Grove, as claimed by the government, instead of one road from Portland to Astoria and from Portland to McMinville, as claimed by the companies, the lands saved to the company under the forfeiture act will be limited to a line drawn at the terminus at Forest Grove of the McMinville branch at right angles to the line of that road, and by a line similarly drawn at the end of the constructed main line at Forest Grove at right angles to its line, thus forming the quadrant over which this controversy arises. In 1887 this question was considered by Secretary of the Interior Lamar, reviewing the instructions of the commissioner of the general land office, who held that the act of May 4, 1870, contemplated two distinct roads,—a road from Portland to Astoria, and a road from Forest Grove to McMinville,—and that the forfeiture by the act of 1885 of "so much of the lands granted * * * as are adjacent to the uncompleted portions of said road" would have divided the forfeited lands from the unforfeited lands by a line drawn through Forest Grove at right angles to the unconstructed line, had it not been for the qualifying phrase "and not embraced within the limits of said grant for the completed portions of said road;" that, by this saving clause, so much of the grant adjacent to the McMinville line as is coterminous with the completed line was saved to the company; that the words in the granting act, "a railroad and telegraph line from Portland to

Astoria, and from a suitable point of junction near Forest Grove to the Yamhill river near McMinville," must be construed as though the words used had been "a railroad and telegraph line from Portland to Astoria, and a railroad and telegraph line from a suitable point of junction near Forest Grove to the Yamhill river, near McMinville;" that this view seems irresistible in the light of the definition of the words "point of junction," as understood in railroad language; that these words are invariably used to indicate a point where two or more railroads join, and not to designate points between the termini of a single railroad; that, as to the use of the word "railroad" in the act instead of "railroads," it is well settled in legal parlance that the singular includes the plural and the plural the singular. 5 Dec. Dep. Int. 549.

It is claimed on behalf of the United States that, for the purpose of aiding in the construction of a doubtful act, it is allowable to recur to the debates that took place upon the passage of the act, but the rule is otherwise. "The court is not at liberty to recur to the views of individual members" of congress "in debate, nor to consider the motives which influenced them to vote for or against its passage. The act speaks the will of congress, and this is to be ascertained from the language used. But courts, in construing a statute, may with propriety recur to the history of the times when it was passed; and this is frequently necessary, in order to ascertain the reason, as well as the meaning, of particular provisions in it." U. S. v. Union Pac. R. Co., 91 U. S. 79. And it may recur to the general state of opinion—public, judicial, and legislative—at the time of the enactment. End. Interp. St. § 29.

The language of the act in question is not, however, fairly open to doubt. "A road from Portland to Astoria, and from a point of junction near Forest Grove to the Yamhill river," does not describe a road from Portland to the Yamhill river. Continuous railway service between the latter points, by means of a junction of two roads, does not constitute such connecting lines a single road; otherwise, the line from the Yamhill river to the junction at Forest Grove, and thence to Astoria, if completed under the grant, would constitute such a road. There is as much reason for saying that the grant was for one road from Portland and McMinville to Astoria as that it was for one road from Portland to Astoria and McMinville; that there was necessarily an overlapping of the grant on the Portland and McMinville sections beyond Forest Grove as that there was such overlapping on the Portland and Astoria sections beyond that point. If it is admissible to say that there were two sections of a single road to which an unapportioned grant applied, and that the company might build either section, and take the entire grant, then, why may we not as well assume that there are two sections of a single road leading from Portland and McMinville to Astoria—a line not built—as that there are two sections of a line to McMinville and Astoria? If the grant is construed to apply to two sections of a road from McMinville and Portland to Astoria, the line of forfeiture must be drawn

at Forest Grove, since there was no road built beyond that point, and, as to these two interpretations, the latter should be adopted, since it is settled that, where there is doubt as to the construction of a statute which operates as a grant of public property to an individual, that construction should be adopted which will support the claim of the government. Nothing can be inferred against the state. Slidell v. Grandjean, 111 U. S. 415, 4 Sup. Ct. Rep. 475. The secretary of the interior construed the grant as though the words "a railroad and telegraph line" were repeated in the clause referring to the line from Forest Grove to the Yamhill river, so that the act will read: "For the purpose of aiding in the construction of a railroad and telegraph line from Portland to Astoria, and a railroad and telegraph line from a suitable point of junction near Forest Grove to the Yamhill river." In behalf of the company, it is contended that, instead of such an implication, the words implied are "a railroad," etc., "from Portland to the Yamhill river," as expressed in the title of the act. But the language of the grant is not doubtful, and the title is no part of the law. The starting point of this road is not left to implication. It is expressly stated to be a point of junction near Forest Grove. The act is for a road from Portland to Astoria, and a road, not implied to be from Portland, but stated to be from a junction at Forest Grove to the Yamhill river. The fact that the word "railroad" instead of "railroads" is used is insisted upon as proof that what the act particularly describes as two roads is after all only one. The rule that in law the singular includes the plural, and the plural the singular, has frequent application in the case of railroads. It is common to speak of a system embracing many roads as though there was but a single road, probably because of the habit of using the word "railroad" to designate the company operating the road. If it should prove to be correct, as claimed by the companies, that the grant in question north of Forest Grove is in fact an unapportioned grant to two sections of a single road, there is nothing to support the contention that this entitles the company in justice, upon building one of these sections, to take the grant for its full prescribed width. Upon no principle of justice can the company make an apportionment, as may be most to its interest or convenience, where the act has not authorized it, and thus secure, for building one section of road, what was granted it for two,—for building 20 miles of road, what was granted it for 40. It is not reasonable to suppose that congress intended to offer any such an inducement to the company not to build the Astoria line.

It is a matter of common knowledge that the practice of aiding railroad construction with grants of land was mainly to open up to settlement unoccupied and practically inaccessible territory. There is nothing else to justify such grants, unless an exception is made in the case of the Pacific railroads, as a measure made necessary by the menace of disunion during the Civil War. Four-fifths of the line of road from Portland to Astoria traversed a rough and wholly unsettled district, but one known to be rich in timber, and

believed to be so in iron and coal, with considerable areas of agricultural land. The motive for the grant in question was the opening up of this hitherto inaccessible region, and the establishment of railroad connection between Portland and Astoria, the two largest towns in the state. The grant was objected to in the senate of the United States upon the ground that it was "an excessive and prodigal appropriation of land to two internal roads in the state of Oregon," and this objection was answered by a senator from Oregon that the grant was through the mountains, where the land was of little value. These are matters of history and common knowledge, and may therefore be referred to in this connection. Congress gave to the Oregon Central Railroad Company this excessive and prodigal grant of lands upon condition that it would build this comparatively long and expensive and much needed road, and also some 20 miles from Forest Grove to the Yamhill river, and the company accepted this offer. It did not comply with the essential requirements of the grant. Every foot of the road built was in the heart of the Willamette valley, and through the oldest settled portion of the country. It was an inexpensive road to build and operate. From what is thus publicly known, it is a reasonable inference that congress would not have made the grant claimed to McMinville, and that the grant from Forest Grove to that point was in consideration of the road from Portland to Astoria. There is therefore no equity in the claim now made to a continuous grant from Portland to McMinville, and no reason to support such a construction of the legislation on the subject had the language used left the matter open to doubt.

The railroad companies rely mainly on the case of U. S. v. Union Pac. Ry. Co., 148 U. S. 562, 13 Sup. Ct. Rep. 724. That was a case where the Kansas Pacific Railway Company, being in fact the eastern division of the Union Pacific Railway Company, was engaged in building a road from Kansas City to Cheyenne, by the way of Denver, under a grant of lands to the Union Pacific Company along the entire line. A local company, the Denver Pacific Railway & Telegraph Company, had graded a roadbed from Denver to Cheyenne. Congress, by a special act, authorized the Kansas Pacific to contract with the Denver Pacific for the construction of its line from Denver to Cheyenne, and to transfer to such company a proportionate share of its grant, which it did. The road of the former company entered Denver on an east and west line, while the latter road enters on a north and south line. It was contended on behalf of the government that the act authorizing the Kansas Pacific Company to contract with the Denver Pacific Company modified the prior granting act so as to cut off the grant of the Kansas Pacific at Denver, and to make an independent grant to the Denver Pacific from Denver to Cheyenne; that, this being so, the limit of the former grant would be a line drawn at the termini at right angles to the lines of the respective roads, thus leaving a triangular shaped tract of land on the outside of the elbow made by the junction of the two lines, without the grant. It was conceded

that, if this line was in fact two roads, with a junction at Denver, such a result as claimed would follow; but the court held that the original granting act, which provided a continuous grant from Kansas City via Denver to Cheyenne, was not thus modified by the provision which allowed the company having such grant to contract with another company for that portion of its line from Denver to Cheyenne. The latter act provided that the Union Pacific, Eastern Division, shall extend its line to Denver, so as to form, with that part of the line authorized to be constructed by the Denver Pacific, "a continuous line of railroad and telegraph from Kansas City, by the way of Denver, to Cheyenne," and that "all the provisions of law for the operation of the Union Pacific Railroad, its branches and connections, as a continuous line, without discrimination, shall apply the same as if the road from Denver to Cheyenne had been constructed by the Union Pacific Railway Company, Eastern Division." The supreme court says that, so far from indicating that this was not to be considered a single line, it is difficult to see how congress could have expressed more clearly by inference that they were not to be treated as independent roads, and that this construction is re-enforced by an amendatory act of June 20, 1874, which provides that, for all the purposes of the act of 1862, the original granting act, and of the acts amendatory thereof, the railway of the Denver Pacific Railway & Telegraph Company shall be deemed and taken to be a part and extension of the road of the Kansas Pacific Railroad to the point of junction thereof with the road of the Union Pacific Company at Denver. To state the case briefly, the Kansas Pacific had a continuous grant, and the fact that congress permitted it to contract with another company for the construction of a part of the line was not allowed to operate so as to cut the grant in two. The inducement upon which the original grant was made was fully realized, and whether the road was wholly built or partly purchased by the company taking the grant could make no difference. The law of that case has no application here. There was no question that the grant was a continuous one from Kansas City to Cheyenne, by way of Denver; and the only question raised was as to whether the subsequent act of congress by which the grantee company was permitted to contract with another company for that part of the line between Cheyenne and Denver cut the grant in two at the latter point. The terms of the granting act in this case are unmistakable. They provide for a continuous grant or single line of road from Portland to Astoria, with a second or branch line from a junction at Forest Grove to the Yamhill river. The theory of the government as to the continuity of these lines cannot be more explicitly stated than the act states it.

I conclude that the lands in the quadrant are included in the lands forfeited to the government by the act of January 31, 1885, and such will be the decree.